OPINION

This matter concerns an Order to Show Cause (OSC) proceeding against officials of the Navajo Board of Election Supervisors (Board) and the Director of the Navajo Election Administration (NEA) to enforce this Court’s order dated October 23, 2014 as to the 2014 General Election. The Board and the NEA failed to show they complied with this Court’s order. The *74 Board was therefore held in indirect civil contempt and in violation of Navajo Election Laws and its duty under the Election Code. The Director of the NEA, on the other hand, was not held in contempt because he has agreed in open court to carry out his administrative duties to comply with Navajo law, including this Court’s order of October 23, 2014 and the Election Code, to ensure the People are presented with qualified candidates in a lawful election.
I
BACKGROUND
Because of the continuing politicalization of this Court’s judgments, it is necessary to give the Court’s procedural perspective of how and why this matter has gotten to the point of contempt. Christopher C. Deschene (Deschene) was not disqualified for not meeting the qualification of 11 N.N.C. § 8(A)(4), which requires that a presidential candidate “must fluently speak and understand Navajo.” Deschene was actually disqualified by default judgment for filing a candidacy application with a false statement as to his qualifications. See OHA’s Final Order Disqualifying [Des-chene] (OHA October 9, 2014). Under 11 N.N.C. § 21(B)(2), a candidate may be removed in the event his or her application contains a false statement, as in this case involving Deschene.
Deschene was given an opportunity to be heard before the Office of Hearings and Appeals (OHA). However, by his own choice, he refused to participate in the remanded legal proceedings by not answering questions and not cooperating with verbal orders of the Chief Hearing Officer. The OHA is a tribunal and there are legal consequences, such as a default judgment, when one decides not to participate. Being a lawyer himself and a person represented by other lawyers, Deschene is presumed to know the law and the consequences for not participating. Furthermore, Deschene was aware of his legal option of an appeal if he disagreed with the OHA’s disqualification but, even with the assistance of an attorney, he failed to launch a proper appeal. Moreover, Des-chene did not seek reconsideration of this Court’s order of September 26, 2014 that upheld the language requirement (11 N.N.C. § 8(A)(4)) as a reasonable restriction and established a definition of and standard for fluency. As a matter of fact, eventually Deschene stated that “[he] accepts that this Court has determined it was necessary to remove him from the ballot and remove the ability of the People to elect him—in service of the principals (sic) this Court explained in its decision.” Deschene’s Combined Objection to Statement of Costs at 5, SC-CV-57, 58-14 (October 30, 2014).
Unfortunately, criticism has been focused almost exclusively on 11 N.N.C. § 8(A)(4) though the OHA and this Court’s judgments, which were not based solely on the qualification that a candidate for the office of the Navajo President “must fluently speak and understand Navajo.” In an attempt to change the legal outcome of this Court’s order to remove Deschene from the general election ballot, the Navajo Nation Council in an unprecedented action voted to amend the language requirements to cure Deschene’s filing of a false statement. That legislation, however, was vetoed by the Navajo Nation President in recognition of our decision that 11 N.N.C. § 8(A)(4) is in harmony with Dine bi been-ahazáanii
PROCEDURAL HISTORY
On October 27, 2014, Dale Tsosie and Hank Whitethorne filed a Motion to Hold Respondents in Contempt of Court and To *75 Issue an Order to Show Cause.[1] The motion requested the Respondents, the Navajo Board of Election Supervisors (Board) and the Navajo Election Administration (NEA), to show cause why they should not be held in contempt for failing to comply with this Court’s order of October 23, 2014. The order entered a Permanent Writ of Mandamus against the Respondents and ordered compliance with 11 N.N.C. § 44 by immediately reprinting the ballots without the name of the disqualified candidate and postponing the November 4, 2014 general election to ensure a valid election. An OSC was subsequently issued against the Director of the NEA and individual members of the Board on October 28, 2014.[2] The OSC set the motion for a hearing on October 31, 2014 and informed the Respondents of legal consequences while providing an opportunity for them to file a written response.
The Respondents, through the Chief Legislative Counsel, filed a response to the motion on October 30, 2014. The response brief, however, did not state that the Respondents complied with the Permanent Writ of Mandamus. In particular it did not state the Respondents implemented 11 N.N.C. § 44 by reprinting the ballots without the name of the disqualified candidate and postponing the November 4, 2014 general election. See Respondents’ Memorandum of Law in Opposition to Motion For Order to Show Cause (October 30, 2014). Instead, the Respondents put forward arguments that would have been more appropriately raised in their September 25, 2014 Amicus Curiae Brief[3]. See Id. Moreover, the arguments furthered by the Chief Legislative Counsel on behalf of the Board are in total disregard of Navajo Election laws as enacted by his other client—the Navajo Nation Council. Furthermore, these statements were made even after Deschene’s explicit statements that he “accepts that this Court has determined it was necessary to remove him from the ballot and remove the ability of the People to elect him ...” Deschene’s Combined Objections to Statement of Costs at 5.
The issues raised by the Respondents as to the validity of 11 N.N.C. § 8(A)(4) are settled. The Court held that the statute enacted by the Navajo Nation Council that a presidential candidate must be fluent in the language of the People is a reasonable restriction that has been reconciled with Diñé bi beenahazúanii.[4] See Tsosie and Whitethorne v. Deschene, Nos. SC-CV-57-14 and SC-CV-58-14, 12 Am. Tribal Law 55, 2014 WL 5100191 (Nav.Sup.Ct. October 8, 2014). Furthermore, the laws regulating the 2014 election remain as codified with President Ben Shelly’s veto. President Shelly stated Navajo leaders should have both language and cultural fluency in *76 order to be qualified and rejected the proposed amendments to 11 N.N.C. § 8(A)(4). See Memorandum on [Vetoed] Legislation CO-k7-lf President Ben Shelly (October 28, 2014). For the sake of posterity and to give a complete background of this matter, the President’s memorandum is quoted in its entirety in the footnote below.[5] Nonetheless, even with Navajo law no longer in doubt, the Respondents through the legal advice of governmental lawyers continued to defy Navajo law.
[[Image here]]

Contempt of Court

Navajo Nation courts have inherent power to punish for contempt of their *77 authority and to coerce compliance with their orders. In re Contempt of Mann, 5 Nav. R. 125, 126 (Nav.Sup.Ct. 1987) (internal citations omitted). A failure to obey a valid court order is contemptuous behavior punishable by the court. Id, Civil contempt proceedings are used to preserve and enforce the rights of litigants and to compel obedience to the orders, writs, mandates and decrees of the court. Id., at 127. Punishment for contempt usually results in loss of property or liberty. Id., at 128. Much is left to the discretion of a trial judge in punishing contempt. In In re Summary Contempt of Tuchawena, 2 Nav. R. 85 (Nav.Ct.App. 1979).
Contempt proceedings are not to be taken lightly. At the OSC hearing, the Respondents were initially informed of the nature of the proceeding and further reminded of legal consequences. In particular, the Respondents were informed that findings under 11 N.N.C. § 324(A) (Qualifications of Board of Election Supervisors) and 11 N.N.C. § 365 (Violation of duty by election officers) may render Board members unqualified to maintain their elected positions or seek re-election. The Council most recently amended the Election Code requiring all elected officials to maintain qualifications of their office throughout their term or face removal. Res. CJA-02-14.
Nonetheless, at the hearing, the Respondents merely reiterated the ai'gu-ments from their briefs and offered no additional information to show cause why they should not be found in contempt. The fact is there was absolutely no showing that the Respondents actually complied with the OHA and this Court’s order. This open defiance is maintained throughout the Respondents’ response brief, which stated “The Motion should be denied, this case should be dismissed and the general election should be allowed to continue on November 4th with an unaltered ballot so that the People may exercise their fundamental right to choose their own leaders.” Respondent’s Memorandum of Law in Opposition to Motion for Order to Show Cause at 10 (October 30, 2014). Thus, we find the Respondents failed to obey a valid court order. A failure to obey a court order is a failure to obey Navajo law.

Violation of Election laws

Not only did the Respondents fail to comply with this Court’s order, the Respondent Board took deliberate actions in violation of the Election Laws. The Board has the duty to administer, implement, and enforce the Navajo Election Code, 11 N.N.C. § 321(A)(1). Consequently, it is unlawful for any Chairman or members of the Navajo Board of Election Supervisors to knowingly and willfully fail or neglect to perform any duty under any part [of the Navajo Election Code] in the manner prescribed by [the Code]. 11 N.N.C, § 365. Furthermore, any violation of the Election Laws renders elected officials of the Board ineligible to hold office and subject to removal, 11 N.N.C. § 240(D) (as enacted by Res. CJA-02-14).
The fact remains that as early as September 5, 2014, the Respondents were on notice of a complaint filed against Des-chene in the OHA. Additionally, the Respondents were on notice of the subsequent appeal to this Court on September 15, 2014, which resulted in a final order from OHA disqualifying Deschene on October 9, 2014. Under Respondents’ procedure that “[j]udieial disputes and other challenges that arise during the course of an election do not cause the NEA to deviate from the election process until the appropriate time has lapsed[,]” Reply to Petition for Mandamus Regarding Merits at 4-5 (October 20, 2014), the Respondents were required to act upon Deschene’s dis *78 qualification in accordance with the automatic provision of 11 N.N.C. § 44 after all timelines for challenges had lapsed on October 21, 2014. Instead, after October 21, 2014, the Respondents took no action having commenced absentee voting with an unaltered ballot bearing the name of the disqualified candidate in violation of their duty under 11 N.N.C. § 871(B)(3) to present “qualified” individuals to the public.
Throughout this litigation, the Respondents have attempted to “interpret” the law and prioritize its interpretation that “it would not be consistent with the Navajo Nation laws to ignore the rights and wishes of the People expressed during the primary election of August 26, 2014, and through early voting in the general election by Mr. Deschene.” Respondents Memorandum at 2. Thus, the Respondents deliberately took no action to reprint the ballots or postpone the election as court-ordered despite the Board’s responsibility “to postpone for a maximum of 60 days any Navajo election for the purpose of printing new ballots required because of changed circumstances.” 11 N.N.C. § 3(E),
In our October 23, 2014 order, we stated the Board is no longer a hearing body and doesn’t have authority to declare Navajo laws invalid through judicial review. No. SC-CV-68-14, 12 Am.Tribal Law at 78-79. We find the Respondent Board violated the Election Laws rendering its members ineligible to maintain their elected offices and, further, the Board knowingly and willfully failed or neglected to perform its duties under the Election Code, a violation of 11 N.N.C. § 365.
The Court is troubled by the actions of the government attorneys in this case, particularly the actions of the attorneys from the Navajo Department of Justice[6] and the Office of Legislative Counsel. At the onset of this dispute, the attorneys from these offices had the opportunity to urge the Board to comply with the decision of the OHA at the October 13, 2014 Board meeting by informing members that 11 N.N.C. § 44 was a ministerial act that required no Board action for the NEA to execute. Instead, government lawyers incorrectly informed the Board that how the NEA should deal with the disqualification is up to the Board. Furthermore, the Chief Legislative Counsel continued to advise two entities (the Board and the Legislature) during a lawsuit over the enforcement of explicit statutory law and the passage of retroactive legislation, giving the appearance of furthering the political desire of one candidate whom had been disqualified. We have said, “[u]nder all circumstances, it is the heightened duty of the government lawyer to be independent, candid, neutral rather than partisan because of their duty to the public trust, and most of all thorough in their analysis.” In the Matter of Frank Seanez, No. SC-CV-58-10, slip op. at 12 (Nav.Sup.Ct. November 24, 2010). When offices and officials of Navajo government take different and conflicting positions on Navajo law, government lawyers should carefully analyze the situation and *79 determine if offices and officials are acting outside the scope of their employment. Unfortunately, it appears from the arguments that such analysis was not done.
The Court realizes that government lawyers can be placed in the uncomfortable proverbial “between a rock and a hard place” especially when officials in the upper hierarchy of the government need to be confronted with dictates of law. But the difficulty of advising government officials does not obviate the duty to render legal advice. The Court will not take this concern any further.
We are a Nation of laws. If we are to continue on our journey as a sovereign Nation, we must collectively uphold and respect the laws of our Nation, especially those laws that are embedded in our identity as Diñé, Our statutory laws provide for amendments. Certain laws such as 11 N.N.C. § 8(A)(4) have been reconciled with Diñé be beenahazáanii and rightfully require consultation of the People before any amendments are enacted by referendum. We encourage all, especially the government, to abide by the laws of the Nation until lawfully amended with careful consideration.
Faced with contemptuous conduct and pervasive violations of the Election Code, this Court has the discretion to impose punishment, to compel compliance with its order, and to deter future contemptuous conduct. Considering the unusual predicament that the Nation now faces, sanctions must address the reality that we are faced with a defiant Board and a scheduled election with an unaltered ballot. Our duty to enforce Navajo law, nevertheless, requires us to present the People with qualified candidates and a lawful election. We therefore proceed as follows.
Having agreed to carry out his duties in compliance with this Court’s Order of October 23, 2014, the Director of the NEA will not be held in contempt. The Director shall postpone only the presidential election for up to 60 days and proceed with all other elections on November 4th. Meanwhile, the Director shall reprint the ballots without Deschene’s name and hold a Special Election for the office of the Navajo Nation President within 60 days of November 4, 2014. Should voting for the President occur at any of the polling locations, the Director shall ensure that those votes and the votes obtained by absentee or early voting for the Navajo Nation President are NOT tallied nor disclosed.
Ill
CONCLUSION
The Court FINDS the following members of the Navajo Board of Election Supervisors in indirect civil contempt for failing to comply with this Court’s order of October 23, 2014: Wallace Charley, Jonathan Tso, Norman L. Begay, Harry D. Brown, Sr., Michael Coan, Lenora Fulton, Frannie George, Ruth Watson and Tom M. White, Jr.
The Court further FINDS the following members of the Navajo Board of Election Supervisors in violation of Navajo Election Laws: Wallace Charley, Jonathan Tso, Norman L. Begay, Harry D. Brown, Sr., Michael Coan, Lenora Fulton, Frannie George, Ruth Watson and Tom M. White, Jr.
The Court further FINDS the following members of the Navajo Board of Election Supervisors knowing and willfully failed or neglected to perform their duties under the chapter of the Election Code in the manner prescribed therein, a violation of 11 N.N.C. § 365: Wallace Charley, Jonathan Tso, Norman L. Begay, Harry D. Brown, Sr., Michael Coan, Lenora Fulton, *80 Frannie George, Ruth Watson and Tom M, White, Jr.
Members of the Board are required to maintain their qualifications throughout their term of office or face removal. 1 N.N.C. § 8(F). Pursuant to 11 N.N.C. § 324(A), the Board members are no longer eligible to hold their elected positions having been found in violation of the Election Laws and in violation of 11 N.N.C. § 365. The Board members are hereby stripped of their authority to supervise the 2014 General Election.[7] The Director of the NEA shall immediately remove from office the above named members of the Board in accordance with 11 N.N.C. § 240(D). The Court is also aware that certain named members are seeking reelection or election into other public offices in the 2014 General Election. The NEA shall also enforce 11 N.N.C. § 240 as to those named members should they be elected.
The Court further ORDERS the Controller to immediately place a hold on all personnel meeting expenditures for the disqualified Board, including personnel stipend payments and mileage allowances, until further order of this Court. The Director of the NEA, through counsel, shall present a motion to rescind this Order prohibiting expenditures whenever a properly constituted Board in established.

. The Respondents acknowledged being served with the Motion on October 27, 2014.

. The Respondents acknowledged being served with the OSC on October 28, 2014.

. In the consolidated appeal of SC-CV-57-14 and SC-CV-58-14, this Court permitted the NEA, through the Office of Legislative Counsel, to appear as an amicus curiae at the September 26, 2014 oral argument. As a requirement to appear as an amicus, counsel stated he read the brief of the parties that centered on the fluency qualification. The Chief Legislative Counsel should have raised his arguments at that time.

.This Court stated almost eight years ago that "Though the rights to choose leaders [1 N.N.C. § 203(A) ] and to participate in the Navajo political process are fundamental, they are not absolute.... [OJther principles of Diñé bi beenahazáaníi may preclude certain candidates from running for office, and therefore restrictions based on such principles do not improperly burden those rights.'' In re Appeal of Vent Lee, 6 Am. Tribal Law 788, 792 (Nav.Sup.Ct.2006).--

. As grounds for his decision to veto Legislation CO-47-14, President Ben Shelly stated:
Pursuant to 2 N.N.C. § 1005(c)(10), the above titled Legislation CO-47-14 is being submitted to the Navajo Nation Council, through the Office of the Speaker, within the ten (10) day requirement. 2 N.N.C. § 1005(c)(10) establishes the Navajo Nation President’s authority to veto legislation passed by the Navajo Nation Council. I will exercise my veto authority with this legislation.
We are a nation of laws, and I took an oath to uphold those laws. The Navajo Nation Supreme Court has said that "Navajo culture is forward looking and it is never preferable to unwind events that have already occurred”. Sandoval v, Navajo Election Administration, 11 Am. Tribal Law 112, 116 (2013). The Navajo Nation Supreme Court recently ordered that the ballots for the 2014 election be reprinted, and the election unavoidably rescheduled to ensure a valid election. The Court has ruled on this matter and its decision should not be so easily or hastily disregarded. This legislation is only intended to help one candidate who has been disqualified.
This election cycle has been mired in debate and controversy over issues regarding the fluency qualifications of candidates for elected office. The Navajo Nation Supreme Court has weighed in on the meaning and interpretation of fluency in Tsosie v, Deschene, No. SC-CV-57, 58-14 (September 26, 2014), and has provided an interpretation of the meaning of and standard for fluency. This should be the standard until the People have been consulted.
The Diñé language is sacred. Navajo leaders should have both language and cultural fluency in order to be qualified. Every society has an obligation to hold onto their traditions. If we lose our language and culture, who are we?
As hard and divisive as this subject has become, it is essential that this fundamental issue be addressed. The People should be consulted on this matter, and a referendum held to ascertain what the People truly want.
A thoughtful, deliberate conversation should occur, not a hasty action a week before the scheduled election date. In Sandoval, the Navajo Nation Supreme Court found that a change to election qualifications enacted "well prior to election” was a reasonable and valid law. Sandoval, at 12. In that case, the change to election qualifications that disqualified a candidate who had been elected was enacted four months prior to the election.
We, as a Nation, have not committed enough attention to the potential loss of our Navajo language and culture. Nor have we committed enough resources to ensure that our children know their language and culture. As hard and divisive as this subject [has] become, it is essential for the Navajo People and its government to address this fundamental matter.
The Nation should expect that the next administration will take up the initiative on this critical issue and implement measures to increase language access and fluency, such as through employee programs, school programs, technology, and opportunities for elders and youth to interact and share knowledge.
I understand that some people will be upset by my decision today, but it is important that we avoid civil unrest such as occurred in 1989. We have a responsibility to ensure each other’s safety and well-being.
I took an oath to uphold the law. The Navajo Nation Supreme Court ordered the 2014 ballots to be reprinted and the election unavoidably rescheduled to ensure a valid election. I therefore exercise my veto authority,
Navajo Nation President Ben Shelly, Legislation CO-47-14: Relating To An Emergency; To Address A Matter Which Directly Threatens the Sovereignty of the Navajo Nation: Amending Language Requirements of the Navajo Nation Election Code (October 28, 2014),

. After President Ben Shelly vetoed retroactive Legislation CO-47-14 (October 28, 2014) and the state of Navajo law in certainty, the Attorney General of the Navajo Nation filed an amicus curiae brief, which was accepted for consideration, requesting for baayati to discuss all of the issues of the Court’s October 23, 2014 Order presented to the Respondents so "the Petitioners could have some empathy for the Respondents and assist with the election process to ensure a valid election is organized and held.” Had the Respondents not been adamant about allowing the general election to proceed on November 4, 2014 with an unaltered ballot, baayati’ would have been a feasible option. There being no such willingness by the Respondents, the request was denied.

. In the absence of the Board, the Director of the NEA shall certify the election results under the ministerial oversight of the Naa’bik’iyati Committee.